## Byars v. Hammock, et al.

(Decided November 21, 1924.)

### Appeal from Christian Circuit Court.

1. Trial—Instruction that Buyer Admitted Purchase of Entire Tobacco Held Erroneous as Ignoring Defense of Fraud.—In action for refusal of buyer to accept 625 pounds of green tobacco as part of entire crop of tobacco purchased, where buyer admitted purchase of crop of brown tobacco, but denied purchase of green and alleged that same had been fraudulently concealed in crop inspected when his agent bought crop, instruction that defendant admitted purchase of entire crop from plaintiffs was erroneous.

2. Sales—Instruction Setting Out Seller's Duty Held Misleading by Expression "Without Fault of Buyer."—Where it was duty of plaintiff sellers properly to classify their crop of tobacco into leaf, lugs, and trash, instruction stating that fact, but qualifying that duty by expression "Without the fault of the defendant," was misleading.

3. Sales—Trial—Instruction Held Error as Ignoring Defense of Fraud—Instruction Held Error as Furnishing Indefinite Guide by Use of Expression "Without Fault of Plaintiffs."—In action for

refusal of buyer to accept 625 pounds of green tobacco as part of crop of leaf tobacco purchased, where one of defenses was that defendant bought only brown tobacco, and that if green tobacco was included in crop purchased, it was fraudulently concealed from defendant's agent when he purchased it, instruction that, if plaintiffs delivered the tobacco in good condition and order and any part of it was refused by defendant without the fault of plaintiffs, plaintiffs could recover, held error both as ignoring the issue of fraudulent concealment, and in using the expression "without fault of plaintiffs;" that being an indefinite guide.

4. Sales—Failure to Instruct on Sellers' and Buyer's Duty under Contract of Sale of Tobacco Held Error.—Where sellers sold their tobacco crop at a certain price per 100 pounds for leaf, for trash, and for lugs, it was error, in action by sellers, to fail to instruct that it was duty of sellers properly to classify their crop into leaf, lugs, and trash, and deliver same in condition set forth in contract, and that if they did so, and all of the tobacco tendered was properly classified and in such condition, defendant was bound to receive and pay for same at contract price.

5. Sales—Failure to Instruct on Buyer's Right to Reject Tobacco Misrepresented in Quality Held Error.—Failure to instruct that if green tobacco was fraudulently concealed by sellers from defendant's agent when he purchased sellers' crop of brown leaf tobacco, defendant was not bound to accept such green tobacco as part of the crop and pay for same, however classified, held error.

6. Damages—Person Damaged by Tort or by Breach of Contract Must Minimize Damages.—Person damaged by tort or by breach of contract must minimize damages.

7. Sales—Sellers, Wrongfully Refusing to Deliver that Part of Divisible Goods Buyer would have Accepted, Held Not Entitled to Damages Arising from Part Not so Delivered.—Sellers wrongfully refusing to deliver that part of divisible tobacco crop buyer would have accepted, held not entitled to damages arising from part not so delivered.

SELDEN Y. TRIMBLE for appellant.

W. H. SOUTHALL for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Reversing.

Appellant is a tobacco buyer at Hopkinsville, while appellees are brothers and farmers of Todd county, some twenty miles from Hopkinsville.

On the 2nd of February, 1922, appellant, through his agent, bought from appellees their crop of tobacco at stipulated prices for the different grades.

The parties at the time entered into the following written contract:

"I have this day sold to J. E. Byars my entire crop of tobacco, consisting of about 9,000 pounds, more or less, which I agree to deliver to them at their factory, corner 14th and Campbell streets, Hopkinsville, Ky., on or before March 1st, 1922, in good keeping order and condition, having the tobacco neatly handled and well sorted, putting all injured tobacco, such as house-burnt and worm-eaten with lugs, to be tied with neat hands. All frosted tobacco excluded from this contract."

While it is not shown in the contract, it was agreed at the time that Byars was to pay $26.00 per hundred for the leaf, $10.00 per hundred for the lugs, and $2.00 per hundred for the trash.

Within the time the tobacco was taken to Hopkinsville and tendered to appellant, but in two consignments of about equal size. Upon the delivery of the first consignment, consisting of two wagon or truck loads, a controversy arose as to whether 625 pounds of the tobacco listed as leaf was in fact green tobacco, and as to whether 340 pounds classified as lugs should have been in fact classified as trash. When the second consignment, consisting of two loads, was tendered Byars declined to accept or pay for that upon the ground that it was thoroughly wet and water soaked, and not in good keeping order and condition as provided in the contract.

The parties not reaching an agreement, appellees thereafter sold the whole crop on the loose leaf floors at Hopkinsville, and realized therefor $552.26 less than same would have brought at the contract price.

This is an action by appellees against Byars alleging that he violated his said contract and refused to receive said tobacco and pay for same at the prices stipulated in the contract, and it is alleged plaintiffs have thereby been damaged in the sum of $552.26 for which judgment is asked.

The answer sets up four grounds of defense:

(1) That the tobacco was bought by defendant's agent while it was in the barn in bulk, and at the time the agent could see only a part of same, and all he saw was nice brown tobacco of standard color, and plaintiffs at

the time falsely represented that the entire crop was of the same character and color, which representation was relied upon; that upon the first delivery plaintiffs tendered to defendant, as a part thereof, 625 pounds of tobacco which was green and of an inferior and cheap grade, and not such as he had bought, and that such tobacco was not in the crop that he bought, or if so, it was fraudulently concealed by the plaintiffs at the time so that appellant's agent could not and did not discover it, and appellees tendered such green tobacco as leaf tobacco and demanded payment therefor at the rate of $26.00 per hundred.

(2) That in such first delivery plaintiffs tendered, as a part thereof, 340 pounds of tobacco which they had classified as lugs, but which in fact was trash, and plaintiffs demanded $10.00 per hundred for this 340 pounds, but defendant was only willing to accept same as trash and at the agreed price of $2.00 per hundred.

(3) Defendant alleges that he agreed at the time to accept the whole of the first delivery of the two wagon loads, except the 625 pounds of green tobacco and the 340 pounds of trash; and he was willing to take the latter at the price agreed upon for trash, and at the time offered to take all the rest of the tobacco and pay for the same at the contract price, but that plaintiffs refused to let him have any of the tobacco in that delivery unless he would accept the 625 pounds of green tobacco and pay $26.00 per hundred therefor, and would also accept the 340 pounds of trash and pay therefor $10.00 per hundred for same as lugs; and upon defendant declining to do these things plaintiffs refused to let him have any part of said two loads of tobacco.

(4) That thereafter plaintiffs brought to the place of delivery the remainder of their crop, but which had been hauled on a rainy day twenty miles in a pouring rain, and that each of said two last loads were thoroughly saturated with water and altogether wet and unmarketable and unfit to be handled, and none of the same was in good keeping order or condition as provided in the contract, and for these reasons defendant declined to receive the said last two loads.

A reply completed the issues, and upon a trial a verdict was returned for the plaintiffs for the full amount, upon which judgment was entered.

The evidence was somewhat conflicting upon each of these issues, but the court refused to give an instruction offered by defendant on the third proposition named, or to give any instruction whatever on that subject, thereby assuming that the refusal of defendant to accept that part of the tobacco which he claimed was green, or to accept and pay for as lugs that part which he claimed should have been classified as trash, was a repudiation of the whole contract, and that plaintiffs had a right to refuse for that reason to deliver to defendant the balance of that consignment at the contract prices.

The instructions were not only somewhat involved, but were erroneous in several respects and did not in fact submit to the jury some of the issues. For instance, it was not submitted whether the 625 pounds of alleged green tobacco was fraudulently concealed from defendant's agent at the time of the purchase and inspection, but the defendant's right to refuse to accept that tobacco was really based upon whether it had been properly classified. There was in fact no question of classification as to that tobacco, either in the pleadings or the evidence; it was conceded it was leaf tobacco, but defendant's contention was that he had not in fact bought it for the reason that at the time of the purchase it was fraudulently concealed from his agent, and falsely represented to the agent that all of the tobacco was of the quality and color of that which he had seen and inspected.

Again the instructions erroneously say to the jury that it is admitted defendant purchased from plaintiffs their entire crop of tobacco, when in fact the pleadings allege that he did not purchase the 625 pounds of green tobacco because the same had been at the time of the sale fraudulently concealed from his agent.

Again, while the court in the first instruction properly said it was the duty of the plaintiffs to properly classify their crop of tobacco into leaf, lugs and trash, further along in the instruction that duty appears to have been qualified by the use of the expression "without the fault of the defendant." Clearly this was misleading, for the whole duty of classifying the tobacco rested upon the plaintiffs, and there is nothing in the pleadings or the evidence suggesting in any way that defendant had anything to do with the classification, or took any action with reference to it. The instruction A offered by appellant

and properly given, accurately stated the rights of the parties with reference to the 340 pounds alleged to have been improperly classified, but the qualification referred to in instruction A might be deemed to have had reference to it and weakened its force.

Again instruction No. 1 said to the jury that if plaintiffs did deliver the tobacco in good condition and order

"and same or any part of same was refused by defendant without the fault of plantiffs,"

they would find for plaintiffs. This was erroneous in two particulars; it in effect said to the jury that if the tobacco was properly classified and any part of it was refused by defendant they should find for the plaintiffs, when one of the vital questions in the case was not a question of classification, but was a question of whether 625 pounds of so-called green tobacco had been fraudulently concealed from defendant's agent. The instruction also erroneously injected the expression "without fault of plaintiffs" in determining whether defendant had the right to reject the tobacco.

"Without fault of plaintiffs" or "without the fault of defendant" furnishes the jury no method of determining in either of the instances cited the question attempted to be submitted. It in effect leaves to the jury the question who was in fault and who was not on these questions, and gives them no accurate way of determining either.

Without further response to other objections to the instructions it may be said that only five instructions should have been given. The first instruction should tell the jury it was the duty of the plaintiffs to properly classify their crop of tobacco into leaf, lugs and trash, and deliver same in the condition set forth in the contract, and that if they did so, and all of the tobacco tendered was properly classified and in such condition, it was the duty of defendant to receive and pay for the same at the contract price. Another instruction should have clearly set forth the issue as to the 625 pounds of alleged green tobacco, and told the jury that if same was fraudulently concealed from defendant's agent at the time of the purchase, and its quality misrepresented, defendant was not bound to accept the same as a part of the purchase and pay for same, however it was classified.

As to the 340 pounds of tobacco alleged to have been improperly classified, the instruction A given on the former trial should be given and instruction No. 2 qualifying that instruction should be omitted.

Instruction B offered by defendant and given, dealing with the tender of the so-called wet tobacco, should be given upon another trial.

The defendant offered and the court refused to give an instruction saying to the jury that if defendant upon the occasion of the first delivery offered or agreed to accept and pay for all of the tobacco then tendered at the contract prices, excepting the so-called green tobacco and the 340 pounds which defendant claimed was improperly classified, and plaintiffs refused to deliver any of same to defendant unless he would accept the green tobacco and receive the 340 pounds said to have been improperly classified as classified by them, then the plaintiffs are not entitled to recover in this action because of defendant's refusal to receive and pay for that part of the tobacco which he was willing to and offered to accept, if any.

This instruction was offered upon the theory that defendant should not suffer any damages because of the wilful or arbitrary refusal of plaintiffs to deliver to defendant that part of the tobacco as to which there was no controversy, it being claimed it was plaintiffs' duty to accept this proposition, if made by plaintiffs, to the end that the plaintiffs' damages might thereby be minimized and their right of recovery, if any, against plaintiff reduced. Here was a crop of tobacco which was capable of being separated and divided in kind, and if because of a controversy as to a part thereof the plaintiffs may wilfully or arbitrarily refuse to deliver any part of same under the contract, it is placed in their power to unnecessarily increase the damage which defendant might have to pay to them because of his alleged wrongful refusal to take a part thereof.

It has long been recognized as a proper rule that where one is damaged by reason of the breach of a contract, or by the tort of another, it is his duty to make all reasonable effort to reduce the amount or extent of the damage to himself, and make his damage as little as possible, not only for his own benefit but for the resultant benefit of the other party.

The rule is stated in Sutherland on Damages, vol. 1, section 88, as follows:

"The law imposes upon a party injured by another's breach of contract or tort the active duty of using all ordinary care and making all reasonable exertions to render the injury as light as possible. If by his negligence or willfulness he allows the damages to be unnecessarily enhanced, the increasel loss, that which was avoidable by the performance of his duty, falls upon him."

Clearly this is a proper case for the application of that rule. If defendant offered to take all of the tobacco except the two small quantities referred to and pay for same according to the contract prices it was the duty of the plaintiffs to permit him to do so, and they should not thereafter be permitted to recover damages because of this breach of duty upon their part.

This rule has often been recognized and enforced, both in contract cases and personal injury cases, in this court. Hollenbach Contract Co. v. Wilkins, 130 Ky. 51; Fidelity, etc., Co. v. Southern News Co., 31 R. 55; Ward v. Brand, 30 R. 827; Hazelip v. Austill, 4 R. 982; Louisville, etc., Ry. Co. v. Comely, 169 Ky. 11.

The judgment is reversed with directions to grant appellant a new trial, and for further proceedings consistent herewith.